**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BARBARA A. SIMONE,

    Plaintiff,

vs.                                              CASE NO. 3:10-cv-509-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks review of the final decision of the Commissioner of Social Security ("the Commissioner") that found Plaintiff's previously determined disability ended on May 1, 2005. Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #12-1). Defendant filed a brief in support of the decision to discontinue disability insurance benefits ("DIB") (Doc. #14). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case was referred to the undersigned by the Order of Reference dated June 14, 2011 (Doc. #19). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by the Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided

on the written record.  For the reasons set out herein, the decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

This case is an appeal under Title 42 U.S.C. § 405(g) of a final administrative decision of the Commissioner of Social Security, which found Plaintiff, Ms. Barbara A. Simone, no longer qualified for disability insurance benefits.  Ms. Simone filed a claim for a period of disability and DIB in December 2001, and was found presumptively disabled, with an onset date of disability of September 16, 2001, during the initial review of her application (Tr. 33).  At that time it was determined that Ms. Simone met the diagnostic criteria for the chronic heart failure listing, under section 4.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1, and was for that reason found to be disabled.  *See* 20 C.F.R. § 404.1520(d).[1]

On June 2, 2005, the Social Security Administration ("SSA") determined that Ms. Simone's condition had medically improved as of May 1, 2005, and she no longer had an impairment or combination of impairments severe enough to preclude her from her past relevant work as a receptionist (*see* Tr. 34-39).  Simone requested reconsideration of this decision (Tr. 40).  Ms. Simone testified before a disability hearing officer on October 20, 2005, who later determined that Ms. Simone was able to perform past relevant work and entered a hearing decision denying the sought reconsideration (*see* Tr. 42-52).  Ms. Simone then requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ William H. Greer on April 13, 2007 (Tr. 245-63).  Ms. Simone testified at the hearing, as did vocational expert ("VE") Dee Dee Locascio.  *Id.*  At the time of the first

---

[1]All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

administrative hearing, Ms. Simone was represented by her current counsel of record, Mr. N. Albert Bacharach, Jr., Esq., but Ms. Pam Dunmore, a non-attorney from Mr Bacharach's firm, was actually present with Ms. Simone at the hearing (*see* Tr. 75, 245). As set forth in his decision dated October 19, 2007, ALJ Greer found that Ms. Simone was no longer disabled and was capable of performing past relevant work (*see* Tr. 11-20). The Appeals Council denied Ms. Simone's request for review of the ALJ's decision on September 4, 2008 (Tr. 4-6).

Ms. Simone filed a complaint for judicial review of the final decision of the Commissioner in the United States District Court for the Middle District of Florida on November 3, 2008. *See Simone v. Astrue*, Case No. 3:08-cv-1057-J-32TEM (M.D. Fla. 2008) (Doc. #1). Thereafter, the Commissioner filed the Motion for Entry of Judgment with Remand in the district court, requesting the ALJ be permitted to further develop the record, with instructions to the ALJ to "obtain additional vocational expert testimony" (*see Simone*, Case No. 3:08-cv-1057-J-32TEM (Doc. #6)). The motion to remand was granted and judgment entered reversing the Commissioner's prior decision pursuant to sentence four of 42 U.S.C. § 405(g) (*see Simone*, Case No. 3:08-cv-1057-J-32TEM (Docs. #7, #8)). The Appeals Council then issued an order vacating the October 19, 2007 decision and remanding the case back to the ALJ for further proceedings (*see* Tr. 285-86).

Upon remand, a second hearing was held before ALJ William H. Greer on January 13, 2010 (Tr. 475-96). Ms. Simone testified at the hearing, as did vocational expert Robert Bradley. *Id.* At the time of the second administrative hearing, Mr. Bacharach remained Ms. Simone's legal counsel, although Ms. Dunmore again appeared at the hearing (Tr. 75, 475). As set forth in the decision dated April 6, 2010, ALJ Greer again found that Ms.

3

Simone's previous disability under the Social Security Act had ceased as of May 1, 2005 and she was capable of performing past relevant work (*see* Tr. 264-73). On Ms. Simone's behalf, Mr. Bacharach filed this action for judicial review of the final decision of the Commissioner (Doc. #1, Complaint).

## II. STATEMENT OF FACTS

Ms. Simone was born on October 5, 1949, making her 56 years old when the Commissioner determined her medical condition had improved to the point that she could return to past relevant work; she is currently 61 years old (*see* Tr. 83). Ms. Simone has a high school education and past relevant work as a hostess, a receptionist, a school crossing guard, a retail sales person and a secretary (*see* Tr. 143). On September 16, 2001, Ms. Simone, with a primary diagnosis of cardiomyopathy, was found to be disabled pursuant to the Listings of Impairments (Tr. 33).[2] Disability benefits were awarded pursuant to that finding.

In June 2005, a continuing disability review was conducted (*see* Tr. 34). Based on reports received in April 2005 from Ms. Simone's treating cardiologist, Dr. Robert Bianco, and her treating physician, Dr. John Bolla, it was determined that Ms. Simone's medical condition had improved to the point she could perform work related activities as of May 1,

---

[2]The Listing of Impairments (the Listings) is in appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. It describes for each of the major body systems impairments that the Commissioner considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). The specific listings follow the introduction in each body system, after the heading, Category of Impairments. Within each listing, the objective medical and other findings needed to satisfy the criteria of that listing are specified. An impairment meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525 (c)(3).

2005 (Tr. 35-39).  Because February 27, 2002 was the last favorable decision finding that Ms. Simone was disabled, ALJ Greer used that date as the comparison point decision ("CPD") date (Tr. 269).[3]

Subsequent to the January 13, 2010 hearing, ALJ Greer issued an unfavorable decision in which he determined that Ms. Simone's impairments had decreased in severity as of May 1, 2005 and that her disability ended (Tr. 273).  Taking the time to note he had carefully considered the entire record, ALJ Greer found that Ms. Simone had the residual functional capacity ("RFC") to:

> perform the full range of sedentary work . . . including the ability to lift/carry up to 10 pounds occasionally and 5 pounds frequently; sit 6 hours (with the option to stand one time per hour for 1-2 minutes); stand/walk 2 hours (15 minutes at a time) in an 8-hour workday; occasionally climb stairs/ramps, crouch, kneel, and crawl; never climb ladders/ropes/scaffolds, work around unprotected heights or moving /hazardous machinery, and never drive motorized vehicles.  Furthermore, she must avoid work around concentrated or excessive dust, odors, fumes or extreme temperatures/humidity.

(Tr. 271).  In determining Ms. Simone's RFC the ALJ stated that he "g[ave] no probative weight to Dr. Bianco's opinions as they [were] inconsistent with his findings/notations/objective medical evidence documented in his treating notes" (Tr. 272), and that the RFC determination was "supported by the objective evidence" in the record. *Id.*  Relying in part on the VE's testimony, the ALJ determined that as of May 1, 2005, Ms. Simone was capable of performing her past relevant work as a secretary, because that work was not precluded by the her RFC.  *Id.*  In sum, the ALJ determined that Ms.

---

[3]February 27, 2002 was the date on which the State Agency reviewing medical doctor found Ms. Simone met a Listing and was therefore presumptively disabled (Tr. 33).

5

Simone's disability ended as of May 1, 2005 (Tr. 273).

## III. THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *See Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal considerations. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936

F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).  The burden rests with the claimant to prove that she is disabled and entitled to Social Security benefits.  *See* 20 C.F.R. § 404.1512(a).

**IV. SOCIAL SECURITY ACT STANDARD FOR DISCONTINUATION OF DISABILITY BENEFITS**

A termination of previously awarded disability benefits is governed by 42 U.S.C. §423(f), which provides in relevant part that benefits may only be terminated if there is substantial evidence to support a finding of medical improvement related to an individual's ability to work and the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f).

The Commissioner has established an eight step sequential process used to determine whether medical improvement has occurred and whether a claimant's disability benefits should cease. 20 C.F.R § 404.1594(f).  The *first* question is whether the claimant is engaged in substantial gainful activity.  *Id.*  If not, the *second* question is whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment in the Listings.  *Id.*

If the claimant's impairments do not meet or equal a listed impairment, the *third* step is to determine whether there has been medical improvement.[4]  *Id.*  If so, the *fourth*

---

[4]Medical improvement is defined as "any decrease in the severity of your impairments which was present at the time of the most recent favorable medical decision. . . ." 20

question is whether the claimant's improvement is related to his or her ability to work based upon the claimant's residual functional capacity. *Id.* The *fifth* question is whether any exceptions apply under subsections (d) (relating to advances in medical treatments and/or therapies that may have improved a claimant's condition, etc.) and (e) (relating to the prior determination of disability being found in error or was fraudulently obtained, etc.). *Id.*

At the *sixth* step, if it has been determined that there has been medical improvement, it must then be determined whether all the claimant's *current* impairments in combination are severe. *Id.* (emphasis added). If it is found that the claimant's current impairments are severe, it must then be determined, at the *seventh* step, whether given current impairments, the claimant is able to engage in the type of work he or she had done in the past. *Id.*

At the *eighth* and final step, if the claimant is not able to engage in the type of work done in the past, the SSA must consider, given the claimant's current impairments, age, education, and past work experience, whether the claimant is able to engage in other substantial gainful activity. *Id.*

## V. ISSUES AND ANALYSIS

In essence, Plaintiff raises three issues in this case. The first issue is whether substantial evidence supports the ALJ's decision finding Ms. Simone was no longer disabled as of May 1, 2005. The second issue is whether the ALJ erred by discounting Ms. Simone's treating physician's opinion regarding her ability to work. The third issue is whether the ALJ erred by failing to pose a proper hypothetical to the VE during the hearing

---

C.F.R. § 1594(b)(1).

on January 13, 2010.   Each issue will be discussed in turn below.

A.      **Substantial Evidence to Support the ALJ's Decision**

Plaintiff specifically asserts that the ALJ "failed to properly apply the medical improvement standard" (Doc. #12-1 at 5).  In this regard, Plaintiff correctly states, "To apply the medical improvement standard, the ALJ must first compare the medical severity of the current impairment or impairments to the severity of the impairment or impairments[,] which were present at the time of the most recent favorable medical decision finding the claimant disabled" (Doc. #12-1 at 3, citing to 20 C.F.R. § 404.1594(b)(7)).   However, Plaintiff's application of this standard to the facts of her case is flawed.

Analysis of this issue requires clarification of what "current impairment or impairments" means as that phrase pertains to a continuing disability review in a DIB case. Title 42, U.S.C. § 423(f) states in pertinent part:

> Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including *new* evidence concerning the individual's prior or *current* condition which is presented by the individual or secured by the Commissioner of Social Security.

42 U.S.C. § 423(f) (emphasis added).  Notably, the statute does not define a time frame encompassed by the use of the word "current."   While it does not appear the Eleventh Circuit Court of Appeals has addressed this issue, at least one sister court within the Middle District of Florida has.  Recently, in *Rosenlund v. Astrue*, 2009 WL 3053698,  No. 8:08-cv-1457-T-TBM (M.D. Fla. Sept. 18, 2009), the court was presented with a cessation

of disability case, with facts strikingly similar to the case before this Court.[5] In determining whether the ALJ's decision was supported by substantial evidence, the *Rosenlund* court first had to ascertain "the pertinent time period" in order to assess the relevancy of some of the medical opinion evidence in the record. *Id.* at *4. Following *Lever v. Barnhart*, 77 Fed. Appx. 178 (4th Cir. 2003), and *Johnson v. Apfel*, 191 F. 3d 770 (7th Cir. 1999), the *Rosenlund* court agreed with the Social Security Administration's interpretation of the statute in finding "the operative date for deciding whether the claimant's disability persists is the date of cessation and not the date of the administrative hearing or the ALJ's decision." *See Rosenlund,* 2009 WL 3053698 at *5; *also see* AR 92-2(6), 1992 WL 425419 (S.S.A. Mar. 17, 1992).

In *Rosenlund,* the ALJ discounted the weight given to the opinions of two of the plaintiff's treating physicians, finding those opinions were unsupported by the doctors' medical records. *Rosenlund*, 2009 WL 3053698 at *4. Perhaps just as importantly, the court in *Rosenlund* found the statements of the treating physicians were not relevant to the ALJ's decision because the doctors made those opinion statements in reports dated after the June 1, 2005 cessation date, and they did not speak to the plaintiff's functional capacity on or before June 1, 2005. *Id.* at *4-*5. In Ms. Simone's case, one of counsel's arguments is that the ALJ erred in his consideration of opinion evidence that postdates May 1, 2005, the date on which the SSA determined Simone's disability had ceased (*see* Doc. #12-1 at

---

[5]Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

7-11).

In this case, as in *Rosenlund*, the ALJ had the duty to determine if the claimant's disability condition had medically improved, if such improvement was related to her ability to work, and if Simone could "now" engage in substantial gainful activity. *See Rosenlund v. Astrue*, 2009 WL 3053698 at *4; 42 U.S.C. § 423(f). The SSA's interpretation of "now" and "current" as those words are used in 42 U.S.C. § 423(f) is entitled to deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (a governmental agency's interpretation of a statutory scheme it is entrusted to administer is entitled to deference). As noted earlier, that interpretation finds the legislative reference to "the individual's ... current condition" pertains to the date the disability ceased under the Social Security Act, not the date of the administrative hearing or the date of the ALJ's decision. *See* AR 92-2(6), 1992 WL 425419 (S.S.A. Mar. 17, 1992). The undersigned agrees with the *Lever*, *Johnson* and *Rosenlund* courts, that the agency's interpretation is reasonable.

Thus, in this case, the critical evidence is that which concerns Plaintiff's condition in May 2005. The ALJ was tasked with reviewing all the medical evidence of record, including evidence subsequent to the determined cessation date, in order to ascertain whether Ms. Simone's disability persisted after the agency had determined it had ceased.

After reviewing the entire record the undersigned finds substantial evidence supports the ALJ's findings that as of May 1, 2005, Ms. Simone's disability under the Social Security Act ceased and she was capable of performing past relevant work (Tr. 272-73). It appears Plaintiff's counsel argues that substantial evidence does not support the ALJ's finding of substantial medical improvement because the ALJ did not properly consider medical

evidence submitted concerning Ms. Simone's development of carotid artery stenosis subsequent to the May 1, 2005 cessation date (Doc. #12-1 at 3-11).[6] Plaintiff's argument is wholly without merit because, as has already been discussed, the relevant period in time that the ALJ must consider when determining whether Plaintiff ceased to be disabled was the time period between February 27, 2002 and May 1, 2005. *See Rosenlund v. Astrue*, 2009 WL 3053698 at *4-5. Moreover, development of any impairments that might affect one's ability to work after the cessation date should be subject to the filing a new application for disability benefits. *See, e.g., Johnson v. Apfel*, 191 F. 3d at 774; *Rosenlund v. Astrue*, 2009 WL 3053698 at *5 n.3.

The evidence in the record supports the ALJ's determination that Ms. Simone was capable of performing past relevant work. In particular, the ALJ based his determination largely on the objective medical evidence from her treating physicians Dr. Bianco and Dr. Bolla in coming to that determination. Both treating doctors' office notes reflect that Ms. Simone's condition steadily improved from the CPD up to the date she was determined to no longer be disabled (*see* Tr. 269-70, ALJ's Decision recapping medical history). It was upon this evidence that the ALJ based his determination that Ms. Simone was capable of performing past relevant work. Thus, the undersigned finds that there is substantial evidence in the record to support the ALJ's determination that there was medical improvement as of May 1, 2005, and that Ms. Simone was capable of performing past relevant work as a secretary.

---

[6] In his April 6, 2010 decision the ALJ made note of the fact that Ms. Simone was diagnosed with "mild, approximately 30% bilateral internal carotid artery stenosis" on February 25, 2005 (Tr. 269).

**B.     Treating Physician's Opinion**

The second issue is whether the ALJ "failed to give greater weight" to the opinion evidence of Dr. Bianco, Ms. Simone's treating physician, in making his determination that Ms. Simone was no longer disabled (Doc. #12-1 at 7-11). Defendant asserts the ALJ properly evaluated the opinion evidence (Doc. #14 at 12-15). Upon review of the ALJ's decision and the record evidence, the Court finds Plaintiff's argument is without merit.

In this case, the ALJ found at the sixth step of the disability review evaluation that Ms. Simone had a decrease in the medical severity of her impairment (Tr. 269-70). Relying in part on medical notes from her treating physicians Dr. Bolla and Dr. Bianco, the ALJ found that the objective medical evidence supported the determination that Ms. Simone's condition had medically improved (*see* Tr. 269-70; *see also* Tr. 195 (Dr. Bianco's medical note stating Plaintiff was "[d]oing well, feels and looks great")); Tr. 192 (Dr. Bolla's letter to Dr. Bianco stating "[s]he is currently doing very well . . . [n]o clinical signs of congestive heart failure."); Tr. 193 (Dr. Bianco's letter to Dr. Bolla stating that Plaintiff's cardiomyopathy was stable and improved)).

While the ALJ determined Ms. Simone's condition had improved, he also found that as of May 1, 2005 Ms. Simone's cardiomyopathy remained a severe impairment (*see* Tr. 271; *see also* 20 C.F.R. 404.1594(f)(6)). At the seventh step, the ALJ determined that despite Ms. Simone's condition still being severe, she was capable of performing her past relevant work as a secretary (Tr. 272-73).

Ms. Simone's counsel argues that the ALJ erred in not affording Plaintiff's treating physician's opinion greater weight (*see* Doc. #12-1 at 7-11). Defendant counters that this claim lacks merit as the ALJ properly evaluated the opinion evidence of Dr. Bianco and

discounted it because it was inconsistent with his own treatment notes (Doc. #14 at 12-13).

The opinion of a treating physician, such as Dr. Bianco, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has held that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Additionally, when "electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.*

The Court's independent review of the ALJ's decision and the underlying administrative record reveals that good cause existed to discount Dr. Bianco's opinion that Ms. Simone was unable to work (*see* Tr. 227, 228, 230, 387-89), notwithstanding the fact that the ability to work under the Social Security Act is an opinion reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183 (S.S. A. Jul. 2, 1996).[7] The ALJ correctly found Dr. Bianco's opinion evidence was contradicted his own

---

[7]As all but one of Dr. Bianco's pieces of opinion evidence were prepared after the date Plaintiff's disability was determined to have ceased, it is at least questionable whether his opinions are relevant to the decision finding Ms. Simone was no longer disabled under the Social Security Act as of May 1, 2005. Dr. Bianco's letter dated February 16, 2005 stated, "Barbara Simone has [been] and remains under my care for an unstable heart condition. She is to re[ceive] no undue physical or emotional stress" (Tr. 230). While Dr. Bianco's letters dated December 29, 2005 and August 26, 2006 refer back to the previous letters and state he still "consider[ed] Mrs. Simone disable[d] and unable to seek employment" (*see* Tr. 227, 228), his residual functional capacity form was completed "as it related to [Ms. Simone's] condition from 05/01/05 to Present" (*see* Tr. 387), which clearly falls outside the pertinent period of time from February 27, 2002 to May 1, 2005.

14

medical notes[8] and was wholly conclusory. Dr. Bianco did not offer objective evidence to support his opinion that Ms. Simone could not work. For example, the "residual functional capacity by [a] treating physician" form that Dr. Bianco completed on October 23, 2007 did not refer to, nor is it supported by, any medical evidence (*see* Tr. 387-90). Dr. Bianco left the explanation section on the form essentially blank; providing only his signature in the space allotted for an explanation of the medical evidence or clinical data that supported his answers (*see* Tr. 389). Additionally, at the January 13, 2010 hearing, the ALJ requested Plaintiff's counsel to provide clarification from Dr. Bianco as to why he felt Ms. Simone was incapable of returning to work as of 2005 (Tr. 490-91). In response to this request, Plaintiff's attorney sent a form letter to Dr. Bianco expressing the ALJ's reservations about the doctor's opinion and requested that Dr. Bianco either affirm his previous findings or reverse his position and state that the medical evidence did not support his previous opinion (Tr. 473-74). Dr. Bianco merely signed his name under the box that indicated that he was not changing his opinion, and did not provide any objective medical evidence to support his decision to do so (*see* Tr. 474). Thus, the ALJ was faced with wholly conclusory opinions that were contradicted by the record evidence, expressed matters reserved for the Commissioner, and, in great part, did not address the pertinent period of time.[9]

---

[8](*See e.g.*, Tr.197 ("Ms. Simone is feeling and looking quite well"); Tr. 196 ("[Ms. Simone] is doing well"); Tr. 195 ("[Ms. Simone is] [d]oing well, feels and looks great."); Tr. 194 ("[Ms. Simone] is doing well"); Tr. 193 ("She has been doing remarkably well on medical therapy . . . She stays quite active caring for her mother")).

[9]If the evidence at the hearing before the ALJ were to confirm that the claimant was no longer disabled on the date of cessation, but were to suggest that the claimant had become disabled again, the correct remedy for the claimant would be to file a new

15

In this case, ALJ Greer gave no probative weight to Dr. Bianco's opinions, stating that "they are inconsistent with his findings/notations/objective medical evidence documented in his treatment notes" (Tr. 272). Here, the ALJ did have good cause to reject the opinions of Ms. Simone's treating physician. See Lewis, 125 F.3d at 1440 (11th Cir. 1997). Furthermore, it is clear the ALJ considered the record as a whole before determining to discount the weight that could be afforded to Dr. Bianco's opinions.

**C.     The Hypothetical Question**

The third issue is whether the ALJ failed to pose a proper hypothetical to the vocational expert. Plaintiff asserts that when the ALJ phrased the hypothetical question to the VE, the ALJ did not consider all of Ms. Simone's impairments because he did not include the limitations that her treating physician, Dr. Bianco, indicated (Doc. #12-1 at 12-14). Specifically, Plaintiff asserts that it was error for the ALJ to disregard the testimony of the VE concerning the answer the VE gave to Plaintiff's representative's question. Id. Plaintiff's representative asked, "if we had a person who was required to take up to four to five breaks during the day, and those breaks lasting anywhere from 15 minutes to half an hour, would that change your answer at all?" (Tr. 495.) The VE responded, "It would eliminate all work, in my opinion" (Tr. 495). Defendant argues the ALJ was not required to include in the hypothetical any findings the ALJ had rejected as unsupported (Doc. #14 at 16). Defendant is correct.

As noted by Defendant, under *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155 (11th

---

application for disability benefits. See *Johnson v. Apfel*, 191 F.3d at 774; *Rosenlund v. Astrue*, 2009 WL 3053698 at *5 n.3;

Cir. 2004), the ALJ is not required to include unsupported allegations in the hypothetical questions to the vocational expert. *See id.* at 1161 (finding an ALJ is not required to instruct the VE to assume conditions that he or she does not find exist). It is well established in the Eleventh Circuit that when a vocational expert is utilized, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). As discussed above, the Court has found the ALJ properly evaluated the medical evidence, including the opinion evidence of Dr. Bianco. Specifically, the ALJ properly gave no probative weight to the residual functional capacity assessed by Dr. Bianco, and thus did not need to include his unsupported limitations in the hypothetical question. The ALJ's RFC assessment is based on substantial evidence. Thus, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairment in the hypotheticals posed to the vocational expert, and if so, whether such failure constitutes grounds for reversal.

In this case, the ALJ posited a hypothetical question to the VE asking the VE consider,

> an individual 56 years old, this is based on the age in 2005, with the work background and education as testified to by the claimant. I want you to assume that the individual can sit up to six hours per day; would need to get up at least once per hour for one or two minutes to just move around a little; stand or walk up to two hours a day, up to 15 minutes at a time; lift up to 10 pounds occasionally, 5 pounds frequently; occasional bending, stooping; no crawling; occasional stairs; no ladders, ropes or scaffolds; occasional crouching; occasional kneeling; no work around unprotected heights; no work around moving and hazardous machinery, or driver motorized vehicles; no work around concentrated or excessive dust, odors, fumes, or extremes in temperature or humidity.

(Tr. 493-94). A reading of the articulated hypothetical reveals that Ms. Simone's

impairments and the resulting limitations on her ability to work as of May 1, 2005 were included in the descriptions given to the VE (*compare* Tr. 493-94 *with* Tr. 271, finding no. 9). The ALJ was not required to include any limitations offered by Plaintiff's counsel or Plaintiff's medical sources that were not supported by substantial evidence and/or were properly discounted. *See McSwain v. Bowen*, 814 F.2d 617 (11th Cir. 1987).

The VE testified that with the stated limitations, the individual would be able to return to Plaintiff's past relevant work as a secretary as that job is generally performed in the labor market (Tr. 493-94). The VE's testimony provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform her past work as of May 1, 2005 and was no longer disabled within the meaning of the Social Security Act as of that date. Although Ms. Simone's representative attempted to distinguish Ms. Simone's limitations from the requirements of any job in the workforce, she failed to establish that Ms. Simone could not perform the job cited by the VE and the ALJ (*see* Tr. 495-96, Tr. 272-73); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (holding that a claimant must prove that he is unable to perform the jobs listed by the Commissioner).

## VI. CONCLUSION

Review of the record as a whole reveals substantial evidence supports the ALJ's finding of Plaintiff's disability ceased as of May 1, 2005. Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of September, 2011.

Copies to:
Counsel of Record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge